

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00245-CV

---

### IN THE INTEREST OF D.D.J.-C. AND N.M.C.-J., CHILDREN

On Appeal from the 287th Judicial District Court
Parmer County, Texas
Trial Court No. 11728, Honorable Kathryn Gurley, Presiding

February 4, 2025

## CONCURRING OPINION

### Before PARKER and DOSS and YARBROUGH, JJ.

I join the majority's well-reasoned opinion in full. I write separately only to address the troubling implications of the dissent's proposed approach to evaluating endangerment under predicate ground (D).

The Texas Supreme Court has spoken with one voice: mere speculation about perceived dangers cannot warrant the irrevocable termination of parental rights. Just months ago, all nine justices agreed that risks to a child's well-being must be more than "a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment." *In re R.R.A.*, 687 S.W.3d 269, 277 (Tex. 2024). Even Justice Blacklock's

dissent in *R.R.A.* warned against relying on "suspicion and inference" rather than clear and convincing evidence showing how and when a parent endangered her children. 687 S.W.3d at 283 (Blacklock, J., dissenting). Instead, courts are instructed to determine whether harm can be inferred from evidence of the "circumstances arising from and surrounding a parent's behavior." 687 S.W.3d at 277.

The record before us illustrates the danger of departing from these principles. There is no dispute that Mother pleaded guilty to harboring a *single* illegal alien and bringing "complete strangers" into the home. But what evidence of danger to the children was presented regarding this course of conduct? The Department's own witnesses candidly admitted they had no actual knowledge of any danger—only speculation about what might have been:

> Q. So the department's alleged that [Mother] knowingly—knowingly allowed the children to be in danger physically or emotionally. So tell us what danger the children were in prior to the department's involvement.
>
> * * *
>
> A. Yeah. So being around individuals that you have no—no idea who they are, what their history is, what, you know, criminal activities they could have been engaged in, that's definitely a danger and concern.
>
> Q. Okay. So did you know any of the people that were at her house?
>
> A. No.
>
> Q. So you don't know if they were dangerous or not, do you?
>
> A. I can't confirm if they were or not, no.

And again:

> Q. What conditions or surroundings endangered those children?

2

A. All of the unknowns in the house; all of the strangers living there for an extended period of time, until they went somewhere else. Yeah, I think that that's the big one.

Q. So just because the children were around strangers, then the Department's position is that their physical or emotional well-being was in danger?

A. Yes.

Q. Do you know any of the people in the home's criminal histories?

A. I do not, and neither did [Mother].

Q. But you didn't know, or the Department certainly didn't know these people's history or background. Correct?

A. Correct.

Q. Are we just assuming, because they weren't citizens, or resident aliens, that they were dangerous people?

A. We're making that decision based on the lack of information [Mother] had on people living in the home.

Q. So it's just an assumption. Correct?

A. Correct.

Time and again, the Department's witnesses could only testify that the "danger" arose simply because they did not know whether any actual danger existed. This is not evidence; it's the absence of evidence. This circular logic—that the unknown itself constitutes endangerment—cannot satisfy the clear and convincing evidence standard our law requires.

The consequences of accepting the dissent's approach would be far-reaching and deeply troubling. Under its approach, a criminal act plus the presence of "complete strangers" should constitute legally sufficient evidence of endangerment. But accepting this logic would fundamentally reshape termination jurisprudence in unacceptable ways.

First, it would allow termination based on stereotypes and subjective views about parenting choices rather than evidence. We cannot endorse a standard where a parent's rights may change depending on whether they live in Hale Center, Harlingen, or Highland Park. Would, for example, a jury in a particular locale be more likely to support termination of parental rights if the "complete strangers" in the present case:

- Were caucasian students overstaying their visas?

- Were unvaccinated?

- Were seeking asylum because they were persecuted on account of their race or religion?

We, of course, do not know the answer because there is an utter dearth of information to guide any factfinder about who the individuals were or the environment they posed. The dissent's approach, however, would risk an inconsistent application of outcomes based on a factfinder's personal biases about which types of strangers are acceptable.

Second, the dissent's approach would effectively nullify meaningful appellate review. If evidence of endangerment can be manufactured from a complete absence of evidence, how can any reviewing court evaluate the sufficiency of that evidence? The dissent's standard would, in fact, potentially render every termination unreviewable when there is any illegal conduct involved; the state could always argue that what we don't know might have endangered the child. Replacing legal and factually sufficient evidence with metaphysical speculation about theoretical harm is precisely what our precedents forbid.

The termination of parental rights remains the "death penalty of civil cases." *In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring). Such a drastic

4

remedy demands more than speculation and fear. The Constitution and our precedents demand clear and convincing evidence of actual or imminent danger—not unsubstantiated fear about some theoretical boogeyman that might lurk beneath our jurisprudential bed.

For these reasons, while I fully join the majority opinion, I write separately to emphasize why we must reject the dissent's proposed departure from our established standards of proof in termination cases.

Lawrence M. Doss
Justice
